IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CORNELL WINFREI MCCLURE        :

    v.        :        Civil Action No. DKC 08-1830
                                          Criminal Case No. DKC 01-0367

UNITED STATES OF AMERICA       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion of Petitioner Cornell McClure to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF Nos. 248, 249). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will deny Petitioner's motion.

I. **Background**

On October 16, 2002, Petitioner Cornell McClure and co-defendant Rufus Millegan were charged via a second superseding indictment for the kidnapping and murder of Tessa Mae Osborne. The indictment included three counts against McClure: (1) murder, (2) kidnapping, and (3) use of a handgun during a crime of violence. McClure waived his right to a jury trial. The case was tried before the court.

During his trial, the Government presented evidence that included fibers from the victim found in the front seat of

McClure's Ford Bronco, testimony regarding a gun linked to the murder, and a witness who last saw the victim near McClure's vehicle. The Government also introduced evidence that McClure confessed to the crimes, but later recanted.

McClure was found guilty on all counts. Then, on May 17, 2005, this court sentenced him to concurrent terms of life imprisonment without the possibility of release for counts one and two and a consecutive term of ten years for count three. McClure appealed to the United States Court of Appeals for the Fourth Circuit, arguing that the death penalty violated the Eighth Amendment, and (2) that the Federal Death Penalty Act ("FDPA") constituted an unconstitutional abridgement of the Indictment Clause of the Fifth Amendment. Because McClure did not receive a death sentence, the court did not reach the merits of those arguments and affirmed his conviction and sentence on July 10, 2007. *United States v. McClure*, 241 F.App'x 105 (4th Cir. 2007). McClure did not petition for a writ of certiorari.

McClure timely filed this motion on July 14, 2008. (ECF No. 248). He seeks relief on three bases: (1) he received ineffective assistance of counsel, (2) the Government improperly failed to turn over a witness' "statement," and (3) there was insufficient evidence to support his conviction for kidnapping. The Government opposed the motion on September 12, 2008 (ECF No. 251), and McClure replied on October 14, 2008 (ECF No. 254).

## II. Standard of Review

Title 28 U.S.C. § 2255 requires a petitioner to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." A pro se movant is of course entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978). But if the Section 2255 motion, along with the files and records of the case, conclusively shows that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255(b).

## III. Analysis

### A. Ineffective Assistance of Counsel

Petitioner contends that the combined actions and failures of his trial attorney amounted to ineffective assistance of counsel. Such claims are governed by the well-settled standard adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* standard, the petitioner must first show that counsel's performance was deficient when measured against an objective standard of reasonableness. *Id.* at 687-88. Second, the petitioner must show that counsel's

3

deficient performance prejudiced the defense, by depriving the petitioner of "a trial whose result is reliable." *Id*. at 687.

To establish the first prong, Petitioner must produce evidence that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *Id*. at 687. There exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id*. at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must judge the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000).

As for the second prong, Petitioner must show that but for his counsel's deficient performance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the [deficient performance] had some conceivable effect on the outcome of the proceeding"; instead, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Id*. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id*. at 694. If no prejudice is established, a court need not review the

4

reasonableness of counsel's performance in order to determine whether counsel provided ineffective assistance. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998).

Although McClure characterizes his ineffective assistance claim as "straight forward" (ECF No. 249, at 3), it is anything but. McClure vaguely alleges that his attorney should have presented "the defense that was available," rather than focusing his efforts on the penalty phase. (*Id.* at 5). He then contends that he had available certain unidentified witnesses who would have testified about (or allowed him to testify about):

- How McClure "knew so much about the victim's death";

- How McClure "knew which guns were used to murder the victim";

- "What happened to the guns that he and his codefendant were accused of using to kill [the] victim";

- "His whereabouts during the time frame the victim went missing";

- The fact that "his statement [was] the product of abuse, coercion, overborne tactics, rumors, and contained verbatim [material] that was not authorized by Mr. McClure";

- The fact that "the FBI and U.S. Park Police reports are lies and not creditable";

- "Where and who the ten fibers came from and how they got on the front passenger seat of Mr. McClure's vehicle"; and

- "That due to the robbery that occurred at Mr. McClure's apartment, he did not have the firearms that [were] linked to murdering the victim."

5

(*Id.* at 6-7). In addition, McClure states that his counsel's failure to call these witnesses "caused [him] to waive his right to testify in his own defense" (*id.* at 3), evidently because "he could only testify to what the witnesses told him, anything more would have been limited by the hearsay rule" (*id.* at 6).

As a general matter, McClure is incorrect in suggesting that his counsel overlooked the guilty stage of his trial. The record shows that counsel's defense strategy rested on an effort to discredit unfavorable testimony and cast doubt on the forensic evidence presented by the Government. (*See, e.g.*, 2/2/2005 Tr., at 55-60 (defense counsel's closing argument)). Counsel advanced that strategy by thoroughly cross-examining each Government witness to highlight inconsistencies or weaknesses in the evidence against McClure.[1] Pursuing an approach like the one pursued by McClure's trial counsel is a common and reasonable approach that does not amount to ineffective assistance.

Moreover, counsel did not provide ineffective assistance in failing to present the witnesses to which McClure alludes. "[T]he decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived

---

[1] Indeed, McClure admits that "counsel was successful in weakening the Government's case through cross-examination." (ECF No. 254, at 6).

benefits against perceived risks, and one to which we must afford enormous deference." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (quotation marks, brackets, and ellipses omitted). Indeed, the Fourth Circuit – along with other courts – has recognized that tactical decisions such as which witnesses to call are "virtually unchallengeable." *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (quotation marks omitted); *see also United States v. Orr*, 636 F.3d 944, 955 (8th Cir. 2011) ("[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengeable decision of trial strategy." (quotation marks omitted)); *Hall v. Thomas*, 611 F.3d 1259, 1293 (11th Cir. 2010) ("[T]he decision concerning which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." (quotation marks omitted)); *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."). Thus, counsel's decision not to call McClure's proposed "witnesses" to testify is afforded extraordinary deference.

McClure has not overcome that deference here, as he has not identified any particular witness that counsel should have called at trial. Instead, McClure simply speaks in broad generalities, asserting without any basis what these unnamed

7

persons would have said. McClure has neither "identified the witnesses, nor alleged that they would have been available at his trial had counsel attempted to locate them." *United States v. Green*, 21 F.Supp.2d 521, 525 (D.Md. 1998).[2] In fact, McClure has not even established their existence. Lacking any particular indication of what specific witness should have been called, McClure cannot establish that his counsel acted unreasonably in failing to call them. *See, e.g., Campbell v. United States*, 364 F.3d 727, 734 (6th Cir. 2004). And, in any event, McClure has not presented any evidence of prejudice, as "[t]his sort of speculation is simply inadequate to undermine confidence in the outcome." *Goode v. Armontrout*, 925 F.2d 239, 240 (8th Cir. 1991) (internal marks omitted).[3] This is

---

[2] Although McClure suggests an evidentiary hearing would be appropriate, conclusory allegations are not enough to warrant such a hearing. *See United States v. Roane*, 378 F.3d 382, 401 (4th Cir. 2004); *Raines v. United States*, 423 F.2d 526, 531 (4th Cir. 1970); *cf. Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), *abrogated on other grounds by Gray v. Netherland*, 518 U.S. 152 (1996).

[3] It is also worth noting that much of the information that purportedly would have been proffered by these anonymous witnesses was presented via other means at trial. For instance, counsel was able to argue against the validity of McClure's recanted statement by attacking the manner in which it was taken by Agent Braga and the credibility of his testimony. Likewise, a Government witness conceded that fibers could be transferred through both direct contact or secondary transfer, and McClure's counsel pointed out witness testimony in his closing statement

especially so given that most of the unidentified witnesses seem directed toward mitigating McClure's recanted statements. As the court concluded at trial, any attempt to attack his own statements would have been decidedly difficult, given that additional letters written by McClure provided corroboration of the content of the earlier statements.

McClure's related claim that he was denied the right to testify fares no better. McClure does not argue that he was denied an opportunity to testify or even that he was advised not to.[4] Instead, he only indicates that his counsel's presentation of the case prevented him from testifying because "he would have been limited [in his ability] to testify about certain events that had occurred." (ECF No. 254, at 13). It is not at all clear what McClure means here, but it is difficult to imagine how the introduction of these other anonymous witnesses would

---

that the victim and friends of the victim had been in the car prior to the crime.

[4] Had he argued that his attorney was ineffective in advising him against testifying, McClure would have again needed to overcome the great deference given to an attorney's advice to a client regarding whether to testify. *See Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) ("[T]he advice provided by a criminal defense lawyer on whether his client should testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." (quotation marks omitted)).

have changed the contents of his own testimony.[5] Furthermore, the argument is premised on the idea that there actually are particular, useful witnesses that counsel should have called – an idea the court has already rejected. Perhaps most importantly, however, "it is the defendant who retains the ultimate authority to decide whether or not to testify." *Daniels v. Lee*, 316 F.3d 477, 490 (4th Cir. 2003). Because it was his choice to make, McClure must bear the consequences of his own decision. *See also Taylor v. United States*, 287 F.3d 658, 660 (7th Cir. 2002) ("Lawyers make many of the strategic and tactical decisions at trial, but this decision lies in the hands of the defendant personally.").

There was no ineffective assistance of counsel here.

**B. Procedurally Barred Claims**

McClure raises two additional claims that were not presented in his direct appeal: (1) that the Government improperly failed to turn over a witness statement, and (2) that there was insufficient evidence at trial to support his conviction for kidnapping. These claims are not properly considered, as they have been procedurally defaulted.

---

[5] In fact, when there is little other evidence to support a defendant's theory of the case, it might make even *more* sense for the defendant to testify. *See, e.g.*, *Gardner v. Galetka*, 568 F.3d 862, 876-77 (10th Cir. 2009).

To attack a conviction collaterally based on errors that could have been raised on appeal but were not, a petitioner must demonstrate "cause and actual prejudice resulting from the errors" or that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999), *cert. denied*, 529 U.S. 1010 (2000). A finding of cause for a procedural default "must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Id.* at 493. This showing may be excused if the movant can demonstrate that he is actually innocent of the crime. *See United States v. Bowman*, 267 F.App'x 296, 299 (4th Cir. 2008) (per curiam) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

McClure acknowledges that he did not bring these claims on appeal. He alleges no cause, no prejudice, and no miscarriage of justice.[6] Despite his entreaties to review these claims

---

[6] In his initial petition, McClure seemed to hint that his appellate counsel was to blame for his failure to present these issues on appeal, but McClure did not make a claim based on ineffective assistance of counsel. Short of constitutionally ineffective assistance, "attorney ignorance or inadvertence is not cause [to excuse procedural default] because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Rouse v. Lee*, 339 F.3d 238, 249 (4th Cir. 2003) (internal marks omitted). On reply, McClure acknowledges that he did not bring a claim of ineffective

11

"whether they are procedurally barred or not" (ECF Nos. 254, at 15), the court cannot.

It is worth noting briefly, however, that these claims would fail on their merits, even had McClure properly preserved them.

First, McClure contends that the Government improperly refused to provide him with an FBI report created after an agent interviewed Raymond Bailey, a witness for the prosecution. When counsel requested a copy of the report after Bailey's direct testimony at trial, the Government argued – convincingly - that the report was not discoverable, as it was only a summary of an interview with a witness (not a statement). McClure now seems to suggest that (a) the Government was required to disclose the material under the Jencks Act and (b) the prosecution improperly withheld this evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Both arguments fail.

Normally, for a document to qualify as *Jencks* material, it must consist of the witness's own words and be signed or

---

assistance, but again argues that his claims should be considered on their merits because he was "miseducated" on the law. (ECF No. 254, at 15). "[A] petitioner's ignorance of the relevant laws and procedures do not amount to cause sufficient to excuse procedural default." *See, e.g., Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). In any event, this argument would have failed even if it had been centered around ineffective assistance, as McClure was not prejudiced by his counsel's failure to raise these non-meritorious claims.

12

otherwise approved by the witness. *United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996); 18 U.S.C. § 3500(e). Notes taken during the course of an interview are typically not *Jencks* statements, as they do not reflect an essentially verbatim transcription of the interview. *United States v. Hall*, 93 F.3d 126, 131 (4th Cir. 1996), *abrogated on other grounds by Richardson v. United States*, 526 U.S. 813 (1999). The record does not indicate that such a statement was ever taken beyond Bailey's assertion that he signed "a couple of pieces of paper" on the day of the interview and that he was "pretty sure" one of the papers was a statement. (ECF No. 249 ¶ 13). Such a conjecture is not enough. As the court explained before, the report was "somebody else's recollection of what the interview was" and was consequently not *Jencks* material. (*Id.* ¶ 7).

This claim also fails when recharacterized as a *Brady* claim. Under *Brady*, the prosecution may not withhold evidence that is "material either to guilt or to punishment." 373 U.S. at 87. To constitute a *Brady* violation, the withholding of evidence must be "so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281. Put differently, the suppression of exculpatory and impeachment evidence can constitute a *Brady* violation if the suppression denies a fair trial to the defendant. *United States v. Bagley*,

13

473 U.S. 667, 676 (1985). Here, Bailey's statement is quite clearly immaterial. McClure argues Bailey's "prior statement" could have been used to impeach Bailey's testimony. At trial, Bailey testified that the victim entered a "white" Bronco. McClure notes that this testimony conflicts with the search warrant, which indicates that the witness saw a "light tan or beige" Bronco. (ECF No. 249 ¶ 19). And according to McClure, the FBI report contains the same reference to a "tan or beige" Bronco. (*Id.*). Even if that were true, this minor inconsistency does not rise to the level of a *Brady* violation, particularly in view of a Government case that the Fourth Circuit characterized as "unassailable." *McClure*, 241 F.App'x at 109. And given that these sorts of witness summaries are not admissible evidence at all (unless the witness has adopted the summary as his own), *see, e.g.*, *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1216 (11th Cir. 2010), the suppression of the Bailey report could hardly be deemed material.

Second, McClure incorrectly asserts that the evidence produced at trial was insufficient to sustain his conviction for kidnapping. "In reviewing the sufficiency of the evidence following a conviction, the court is to construe the evidence in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it, and will sustain the jury's verdict if any rational trier of fact

could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Penniegraft*, 641 F.3d 566, 571 (4th Cir. 2011). In light of that standard, it is obvious that the record was more than sufficient to convict McClure on all counts. Even putting the standard aside, the court firmly believed that the evidence was sufficient when it found him guilty at trial, and McClure has offered nothing to sway that conviction. Indeed, the Court of Appeals specifically noted that the evidence was both "unassailed and unassailable." *McClure*, 241 F.App'x at 109; *cf. Romines v. United States*, 177 F.Supp.2d 529, 533 (W.D.Va. 2001) (holding that a Court of Appeals determination that the evidence was sufficient barred raising the issue in a Section 2255 motion). He is not entitled to relief on this ground or any other.

**IV. Conclusion**

For the foregoing reasons, McClure's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475

F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quotation marks omitted). McClure does not satisfy the above standard.

A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
